IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAMIAN J. and DAWN J. | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 06-3866 |
| | : | |
| THE SCHOOL DISTRICT OF | : | |
| PHILADELPHIA and | : | |
| COMMUNITY COUNCIL FOR MENTAL | : | |
| HEALTH AND MENTAL RETARDATION[1] | : | |

**MEMORANDUM AND ORDER**

**Juan R. Sánchez, J.**                                                                                                **January 22, 2008**

Damian J., a 12-year-old child with a learning disability and emotional disturbance, and his mother, Dawn J., ask this Court to find the School District of Philadelphia failed to provide Damian J. with a Free Appropriate Public Education (FAPE) by not implementing Damian's Individual Education Plan (IEP)[2] under the Individuals with Disabilities Education Act (IDEA), 42 U.S.C. § 1401 *et seq.*, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, during the 2005-2006 school year.[3] The School District argues the record supports both the Special Education Hearing Officer's denial of compensatory education and the Appeals Review Panel's affirmation.

---

[1]Defendant Community Council for Mental Health and Mental Retardation was dismissed on April 25, 2007.

[2]The centerpiece for the implementation of FAPE is the IEP. *S.H. v. State-Operated Sch. Dist. of the City of Newark*, 336 F.3d 260, 264 (3d Cir. 2003). The IEP consists of a detailed written statement developed for each child summarizing the child's abilities, how the disability affects performance, and measurable annual goals. *Id.* The IEP specifies the special education services and supplementary aids the school will provide the child, explaining how these will allow the child to progress. *Id.*

[3]Plaintiffs' claim for compensatory damages under Section 1983 of the Civil Rights Act, 42 U.S.C. § 1983, was dismissed on September 7, 2007.

1

Because I find Kenya Jones and Shermont Fox, Damian's emotional support classroom teachers, failed to implement substantial provisions of Damian's IEP, I grant partial judgment for Plaintiffs and award full days of compensatory education for the time Damian was under Jones's and Fox's instruction.

**FACTS**

In September, 2005, Damian J. began attending an emotional support class led at the time by Kenya Jones at Longstreth Elementary School. The emotional support class was operated and staffed by Community Council for Mental Health and Mental Retardation under contract with the School District of Philadelphia. At the beginning of the school year, Damian's IEP[4] implementation appeared effectual. Ex. 13, SD-5; Ex. 14, P-6; Ex. 14, P-5. His IEP, however, was not being implemented. Jones did not have the qualifications or training to put the IEP into effect and Shermont Fox, who led the class for two weeks at the end of December, 2005, failed "to implement even the simpler components of the plan" after the IEP was revised and finalized on December 8, 2005. Ex. 14, P-9.

Plaintiffs requested a special education due process hearing, which was held in four sessions

---

[4]Damian's initial IEP was developed on August 25, 2005 and described in the Notice of Recommended Educational Placement (NOREP). Ex. 13, SD-14. The NOREP recommended a full-time emotional support program with opportunities to participate in learning support classes as determined by the IEP team. Ex. 13, SD-14. The NOREP noted Damian had deficits in both academic and behavioral areas, his targeted behaviors were "refusal to comply with directives" and "verbally and physically abusive toward others," and he required emotional and social skills training to learn anger management strategies, reduce defensiveness, and build cooperative interactions. Id. The NOREP also reported Damian required therapeutic staff support (TSS) in the school environment. Id. The recommended IEP contained goals for reading fluency, reading comprehension, solving number problems, and increasing pro-social behavior by decreasing inappropriate behaviors. Id. Dawn J. gave "interim approval" of the IEP and agreed to its implementation from September 14, 2005 until the IEP team reconvened on October 31, 2005

beginning on March 3, 2006. On June 1, 2006, a Pennsylvania Special Education Hearing Officer concluded the District did not deny Damian FAPE and declined to award Damian compensatory education for the 2005-2006 school year. A Pennsylvania Special Education Appeals Panel upheld the Hearing Officer's decision on July 13, 2006.

Plaintiffs commenced the present action in this Court seeking compensatory damages resulting from the School District's failure to implement Damian J.'s IEP during the 2005-2006 school year. Plaintiffs allege from September to the end of December, 2005, Jones and Fox, the teachers at different times responsible for implementing Damian J.'s IEP, were not qualified to teach Damian's class, violating the IDEA and Pennsylvania law. Their lack of qualifications and training resulted in a failure to implement Damian's IEP. Plaintiffs also contend Damian was improperly restrained on three occasions during the 2005-2006 school year. Finally, Plaintiffs assert Damian's IEP was implemented improperly by inadequate progress reporting of IEP goals[5] and by a failure to address Damian J.'s behavioral needs. Plaintiffs argue all of these resulted in a denial of FAPE. The School District asks this Court to affirm the decision of the Appeals Panel, arguing the administrative decision was supported by the facts and the record.

On November 14, 2007, I granted Plaintiffs' motion to supplement the administrative record with the deposition testimonies of Kenya Jones, Damian J.'s classroom teacher from September through December of 2005, and Patricia Nuble, Community Council's corporate designee and the director of school services in charge of overseeing the emotional support programs, care, and school-

---

[5]Plaintiffs contend Damian's progress on his IEP was never reported because Kenya Jones was not instructed to and did not know what the IDEA's requirements were. Because I agree the School District failed to implement Damian's IEP while Jones was the teacher, it is unnecessary to address this claim.

based behavioral health. Nuble N.T. 6.

**DISCUSSION**

IDEA and Section 504 claims are similar causes of actions. The IDEA imposes an affirmative duty on states which accept certain federal funds to provide a free appropriate public education (FAPE) for all their disabled children. 20 U.S.C. § 1411 (2005); *Lawrence Tp. Bd. of Educ. v. New Jersey*, 417 F.3d 368, 370 (3d Cir. 2005) (citing 20 U.S.C. § 1412(a)(1)). Section 504 is a negative prohibition against disability discrimination in federally-funded programs. 29 U.S.C. § 794(a) (2002). "[T]he regulations implementing § 504 adopt the IDEA language, requiring that schools which receive or benefit from federal financial assistance 'shall provide a free appropriate public education to each qualified handicapped person who is in the recipient's jurisdiction.'" *W.B. v. Matula*, 67 F.3d 484, 492-493 (3d Cir. 1995)(citing 34 C.F.R. § 104.33(a)).

To prevail, Damian must show the school failed to implement substantial or significant provisions of the IEP, as opposed to a mere *de minimis* failure, such that he was denied a meaningful educational benefit. *See Melissa v. Sch. Dist. of Pittsburgh*, 183 Fed. Appx. 184, 187 (3d Cir. 2006)(citing *Houston Indep. Sch. Dist. v. Bobby R.*, 200 F.3d 341, 349 (5th Cir. 2000); *T.R. ex rel. N.R. v. Kingwood Twp. Bd. of Educ.*, 205 F.3d 572, 577 (3d Cir. 2000)). To establish a violation of § 504, Damian must demonstrate the school excluded him from participation, denied him benefits, or subjected him to discrimination.[6] *Matula*, 67 F.3d at 492.

When a party aggrieved by the decision of the hearing officer brings a civil action, the IDEA provides the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence,

---

[6]The remaining elements of a § 504 violation are not at issue here. *See Matula*, 67 F.3d at 492.

shall grant such relief as the court determines is appropriate.  § 1415(i)(2)(C).  Under this standard, the court should give "due weight" to the administrative proceedings. *Board of Educ. v. Rowley*, 458 U.S. 176, 205-06 (1982).

The "due weight" requirement has been described as "modified *de novo*" review, and is the appropriate standard of review of administrative hearing decisions in IDEA cases. *S.H. v. State-Operated Sch. Dist. of the City of Newark*, 336 F.3d 260, 270 (3d Cir. 2003).  A federal district court reviewing the administrative fact finder is required to defer to the factual findings unless it can point to contrary nontestimonial extrinsic evidence on the record. *Id*.  The court must explain why it does not accept "findings of fact to avoid the impression that it is substituting its own notions of sound educational policy for those of the agency it reviews." *Id.*

Plaintiffs assert the Special Education Hearing Officer and the Appeals Review Panel incorrectly determined Damian J. was not denied FAPE during the 2005-2006 school year.  Plaintiffs argue Damian was denied FAPE because the lack of qualified and properly trained teachers resulted in a failure to implement Damian's IEP, Damian was improperly restrained on three occasions, and Damian's behavioral needs were not addressed appropriately.  Giving due weight to the administrative proceedings, and reviewing the record and the new evidence not previously before the administrative law judges, I conclude by a preponderance of the evidence Damian was denied FAPE from September through December, 2005.  As to the remainder of the school year, I must defer to the factual findings of the administrative proceedings, finding no contrary nontestimonial extrinsic evidence on the record. *See S.H.*, 336 F.3d at 270.

Kenya Jones, Damian's emotional support classroom teacher, lacked the qualifications to be teaching an emotional support classroom and received little training or instruction on implementing

Damian's IEP. She was left to teach based on her own "instinct." Jones N.T. 46- 47. Yet, Jones was responsible for implementing Damian's IEP. Jones N.T. 21, 56-57; B. Johnson N.T. 523-24. Consequently, substantial provisions of Damian's IEP were not implemented.

As a special education teacher, the IDEA required Jones to be "highly qualified," meaning she was required to have full state certification as a special education teacher, or have passed the state special education teacher licensing examination, and hold a license to teach in Pennsylvania as a special education teacher. *See* 20 U.S.C.A. § 1401. Pennsylvania law also required proper certification. *See* 22 Pa. Code § 49.13(b)(7). Without certification, Jones needed an emergency, long-term, or day-to-day permit to teach. *See* 22 Pa. Code § 49.31. Nevertheless, Jones, with no prior experience teaching a special education or emotional support classroom, no degree in education, and no teaching certifications, licenses, or emergency permits[7] to teach in Pennsylvania or any other state, was an emotional support classroom teacher at Longstreth from February, 2005, through December, 2005. Jones N.T. 5-12.

In addition, in spite of Jones lacking qualification to teach an emotional support classroom, she received little training at Longstreth. It was left to Jones to structure the classroom and establish a behavior management system. Fox N.T. 238-240, 254-55. At the beginning of the 2005-2006 school year, Jones asked for "additional support" in her classroom because she had not been given any; she had been "just put into a situation" and left to "feed off [her] own instinct." Jones N.T. 46-47. She testified no "additional support" was provided until later in the fall semester when Shermont Fox, a Community Council supervisor and Damian's behavior specialist, began coming in during class time to tell her how things should be done differently. Jones N.T. 49.

---

[7]Jones testified she had applied for emergency certification around February, 2005, when she began teaching at Longstreth, but had never received anything in response. Jones N.T. 20-21.

Training on implementing IEPs was scant. Jones testified she had heard of the Individuals with Disabilities Education Act, but did not know what it meant. Jones N.T. 55. Jones's training on implementing IEPs consisted of receiving books on how to write IEPs and observing the writing of an IEP over two 45-minute sessions. Jones N.T. 17-19. Jones testified when she was given a copy of Damian's initial IEP before he started at Longstreth, she received no instructions on its implementation. She simply read through the IEP. Jones N.T. 56-58. Jones testified no one reviewed Damian's IEP with her and no one told her what the requirements were for Damian in terms of how to keep progress on his IEP. Jones N.T. 56-58.

With little training and no teaching qualifications, Jones's management of Damian's classroom and the implementation of his IEP suffered. The Hearing Officer noted Jones "had difficulty with organization and consistency in following a classroom management system. The District's special education case manager met with her to assist her and also met with the Community Council supervisory personnel regarding [her difficulties]." Hearing Dec. 11. Patricia Nuble testified Jones "had been on a corrective action plan and did not meet the expectations." Nuble N.T. 36. There had been concerns regarding Jones's classroom management and instruction because of a failure to engage all students, an increase in "behavioral health episodes," and discipline concerns in the classroom. Nuble N.T. 36-38, 40. In December, 2005, Fox had to take over Damian's class to settle down the classroom, get the children on a set instructional schedule, and "put some behavior management systems in place." Fox N.T. 252-53

As to implementing Damian's IEP, Jones testified she had not been instructed to send progress reports home on the goals and objectives of his IEP. Jones N.T. 56. Although she knew she had to write a daily journal on Damian, she viewed this as unfair as it was not done for the other

7

children. Jones N.T. 37-38. There is no evidence of any notes, daily journals, or any kind of progress reporting prepared by Jones in the record. Jones testified she had sat in on only one IEP meeting for Damian. Jones N.T. 40. Jones's only method of keeping data on Damian's progress was to put his tests and class work into a folder. Jones N.T. 40. She never met with Damian's mother to discuss the IEP she was implementing. Jones N.T. 59-60. Even after the November 10, 2005 IEP, which named Jones as IEP Coordinator, was developed, Jones was still using the prior August 25, 2005 IEP for Damian. Jones N.T. 61. Jones was eventually terminated in December, 2005, because of concerns regarding her classroom management and instruction arising from an increase in discipline issues and behavioral health episodes in the classroom. Nuble N.T. 37-40.

Following Jones's termination, Shermont Fox took over as lead teacher of Damian's classroom for about two weeks. N.T. 219, 221, 253, 690-91, 715, 745-46. Fox testified he was not certified to teach in Pennsylvania, but had a degree and certification in elementary education and administration. Fox N.T. 132-33. The Appeals Panel noted Fox was not certified in Pennsylvania but was a certified teacher, and Plaintiffs had failed to show a "harm [or] a nexus between [the] teacher's credentials and inappropriate implementation." Appeals Dec. 10. I am persuaded, however, by the nontestimonial report of Dr. Richard Hess, an independent learning and behavior specialist whose testimony the Hearing Officer found credible and "quite helpful," Hearing Dec. 14, and I find Damian's IEP was inadequately implemented during the period of time Fox taught Damian's class.

Dr. Hess observed the classroom on December 19, 2005, during the two-week period Fox was teaching, and reported in a letter his conclusion Damian was inappropriately placed and needed to be reassigned to an instructional setting "more conducive to plan implementation." P-9. Dr. Hess

reported it was clear "(1) none of the instructional staff in his Emotional Support class are familiar with Damian's behavior support plan; and (2) in such an unstructured, loud, and threatening setting, his behavior plan cannot be implemented." P-9. Dr. Hess opined "[t]hough another change is clearly not in Damian's best interest in any but the direst circumstances, I believe such a change is needed in this case." P-9. Dr. Hess further noted "it is frustrating and demoralizing to see almost complete failure to implement even the simpler components of the plan." P-9. Although this report of Dr. Hess was part of the administrative record, neither the Hearing Officer or the Appeals Panel addressed it.

I find by a preponderance of the evidence the school failed to implement substantial provisions of Damian's IEP, such that he was denied a meaningful educational benefit, during the first half of the 2005-2006 school year. *See* § 1415(i)(2)(C); *T.R. ex rel. N.R.*, 205 F.3d at 577. The additional evidence demonstrates Jones's lack of qualification and scant training impacted implementation of Damian's IEP. *See* § 1415(i)(2)(C). Consequently, Damian did not receive the benefit of substantial provisions of his IEP while his classroom was taught by Jones. The contrary nontestimonial report of Dr. Hess shows Damian's IEP simply was not implemented during Fox's tenure. *See S.H.*, 336 F.3d at 270. The School District's failure to implement substantial provisions of his IEP resulted in the denial of a meaningful educational benefit for Damian.

Plaintiffs next argue Damian was restrained improperly on three occasions during the 2005-2006 school year.[8] Pennsylvania law[9] permits restraints to control acute or episodic aggressive

---

[8] The record shows the restraints occurred on December 5, 2005, February 16, 2006, and March 20, 2006. Nuble N.T. 104.

[9] State standards of educational opportunity for handicapped students are incorporated into the IDEA, and are therefore enforceable in federal court. *Geis v. Board of Education of Parsippany-Troy Hills,* 774 F.2d 575 (3d Cir. 1985).

behavior only when the student presents a danger to himself or others. 22 Pa. Code § 14.133(c).[10] When a restraint is used, an IEP meeting is required to review the IEP for appropriateness and effectiveness. *Id.*

The Appeals Panel addressed only the December 5, 2005 incident of restraint, finding because Damian did not like a new seating arrangement and began to flip desks and throw chairs, a staff member had to hold Damian to prevent others from injury. Appeal Dec. 8. Dawn J. arrived at school, saw what happened, and claimed Damian's wrist was injured. *Id*. The next day, however, Damian was using the wrist with no apparent discomfort, shooting rubber bands at classmates as well as pushing a classmate to the floor with both hands. *Id.* The Appeals Panel acknowledged although the School District should have had an IEP meeting after the incident, the intent of the requirement was met because multiple IEP meetings were being held to discuss Damian's behavior and behavior plans around this time. *Id*. 9. In addition, even though Dawn J. had the opportunity to reject Damian's finalized IEP in light of this incident, she did not, and signed the NOREP on December 8, 2005. *Id.* 9; Ex. 14, P-7.

Nuble's testimony adds that on December 5, 2005, when Damian refused to move his seat, the staff member simply used a one-arm assist and walked Damian to another seat. Nuble N.T. 105. Nuble described the one-arm assist as an extended arm held up to block a student from exiting the

---

[10]Restraints to control acute or episodic aggressive behavior may be used only when the student is acting in a manner as to be a clear and present danger to himself, to other students or to employees, and only when less restrictive measures and techniques have proven to be or are less effective. The use of restraints to control the aggressive behavior of an individual student shall cause a meeting of the IEP team to review the current IEP for appropriateness and effectiveness. The use of restraints may not be included in the IEP for the convenience of staff, as a substitute for an educational program, or employed as punishment.
22 Pa. Code § 14.133(c).

room, or where an arm is used to take hold of the student's arm or hand. Nuble N.T. 64.

No evidence has been presented contradicting the Appeals Panel findings concerning the December 5, 2005 incident. Where there is no contrary nontestimonial extrinsic evidence on the record, I must defer to the factual findings of administrative proceedings. *See S.H.*, 336 F.3d at 270. Here, the record shows Damian displayed aggressive behavior by flipping desks and throwing chairs. His behavior endangered himself and others. A staff member used the one-arm assist. As to the failure to hold an IEP meeting following the incident, Plaintiffs do not show how this was a denial of FAPE in light of the situation. *See Melissa*, 183 Fed. Appx. at 187 (citing *Bobby R.*, 200 F.3d 341; *T.R. ex rel N.R.*, 205 F.3d at 577). An IEP team meeting is convened after the use of a restraint to review the IEP for appropriateness and effectiveness. *See* 22 Pa. Code § 14.133(c). Here, the purpose of the meeting was being met. At the time, the IEP team was working on finalizing the new IEP, Damian's behavioral needs were under discussion, and Dawn J. signed the new NOREP on December 8, 2005, three days after the December 5, 2005 restraint.

The other two incidents of restraint are presented only in the new evidence submitted in this Court. On February 15, 2006, as Damian tried to leave the classroom, a staff member "was smacked in the face." Nuble N.T. 70. Subsequently, a staff member restrained Damian with a "hook and carry," where a child is lifted in a hug-like hold and transferred to another section of the room. Nuble N.T. 70-71. On March 20, 2006, Damian refused when asked to move his seat and used "a lot of profanity, pushed the desks, threatened to bring family members to his school," left the classroom, and physically assaulted a staff member. Nuble N.T. 73-75. The staff member used a "two-arm seated assist," a hold where the staff member and the child are both sitting on the floor. Nuble. N.T. 74. Damian was kept in the restraint for two to three minutes. Nuble N.T. 77 Nuble

testified the reason for the restraint was Damian's physical aggression.[11]  Nuble N.T. 75, 77, 107.

In the February incident, Damian used physical aggression by "smacking" a staff member and tried to leave the classroom.  He presented a danger to others when he physically hurt the staff member and a danger to himself when he tried to leave the classroom.  In the March incident, the pushing of desks, the use of profanity, and the physical assault of a staff member were all physically aggressive acts where he presented a danger to himself and others.  I find the restraints were appropriately used to respond to aggressive behavior where Damian presented a danger to himself or others.[12]

Finally, Plaintiffs argue generally that throughout the 2005-2006 school year, the School District failed to address Damian's behavioral needs due to a chaotic environment, staffing problems, and an inappropriate placement.[13]  The Hearing Officer found by the beginning of January, 2006, a new teacher had been successfully installed and the classroom newly structured, but because of

---

[11]In her deposition, Dawn J. testified while at Longstreth, Damian had his wrist sprained, his face hit, and his face smashed into the floor, and students were being physically and mentally abused. Dawn J. N.T. 60.  When questioned about treatment, however, Dawn J. testified Damian was never treated for any injuries to his face or for mental harm.  Dawn J. N.T. 61.

[12]Plaintiffs in a footnote merely assert they renew their objection to the District's failure to hold IEP meetings after the use of restraints, *see* Pl. Br. 9, but do not demonstrate how these failures resulted in a denial of FAPE.  A February 22, 2006 letter with an exhibit list attached from Plaintiffs' counsel to opposing counsel shows parties were in the midst of preparing for, and, in March, in the middle of, the administrative proceedings at this time.  On February 14, 2006, a "resolution meeting" was held where Dawn J. agreed to consider other placements. Hearing Dec. 80; P-27. In February, 2006, Damian withdrew from Longstreth, returned in March, 2006, and withdrew again. Dawn J. N.T. 16, 61, attachment to Def. Br.  The appropriateness of Damian's placement and the implementation of his IEP was under much scrutiny at this time.  The purpose of the IEP meetings was being met.  *See* 22 Pa. Code § 14.133(c).  I cannot find he was denied FAPE as a result of any failure to hold IEP meetings after each of these incidents.

[13]Many of Plaintiffs' examples refer to the first half of the 2005-2006 school year, and to the extent they do refer only to that time period, it is unnecessary to address these limited examples as I agree Damian was denied FAPE from September through December of 2005.

Damian's poor attendance,[14] the School District was deprived of the reasonable opportunity to see whether the changes in the classroom and in the revised IEP would work for Damian.  Hearing Dec. 16.  The Appeals Panel also found the School District took steps to correct the situation by revising the IEP but it had not had the opportunity to implement the new IEP finalized on November 22, 2005, and signed by Dawn J. on December 8, 2005.  Appeals Dec. 9.  It stated:

> It is unfortunate that the Parent has elected to withdraw the Student from school, thereby foregoing the opportunity to assess the effectiveness of the agreed upon IEP.  By doing so, the Parent also denies the Student the opportunity to work with and benefit from the collaboration of the independent behavior specialist and the District.  Lack of attendance disrupts the effects of the agreed upon IEP and the consistency by which i[t] should be implemented.  Accordingly, even though the District's implementation of the IEP encountered some obstacles and irregularities, the District moved rapidly to correct the problems.

Appeals Dec. 11.

Plaintiffs' contentions relating to the latter half of the school year are not supported by any contrary nontestimonial evidence in the record.  In fact, Plaintiffs concede the revised IEP "was obviously more conducive for Damian's learning," their only complaint being the School District "was dilatory in its attempts to improve Damian's daily school experience."  Pl. Br. 17.  Nor do they claim Gail Hightower, Damian's classroom teacher beginning in January, 2006, was not qualified, or that any problems with Hightower's teaching resulted in a failure to implement Damian's IEP.  The record shows a newly structured classroom, a qualified teacher, and a revised IEP were in place in January, 2006.  On this claim, Plaintiffs have failed to show Damian was denied a meaningful educational benefit.

---

[14]The Hearing Officer noted Damian had been absent on 9/27/05, 10/18/05, 11/2/05, 11/7/05, 11/18/05, 11/22/05, 11/23/05, 12/7/05, 12/8/05, 12/14/05, 12/20/05, 12/21/05, 12/22/05, 12/23/05, 1/3/06, 1/4/06, 1/5/06, 1/6/06, 1/11/06, 1/12/06, 1/13/06, 2/1/06, 2/6/06, 2/7/06, 2/8/06, 2/9/06, 2/14/06, and 2/16/06.  From March to the middle of April, 2006, Damian was in school one day.  Hearing Dec. 12; S-5.

Accordingly, I grant partial judgment for Plaintiffs and award full days of compensatory education[15] for each school day[16] during the period of time Damian was under Jones's and Fox's instruction. An appropriate Order follows.

---

[15] The IDEA provides the court "shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(C)(iii). Compensatory education for a period equal to the period of deprivation, excluding the time reasonably required to rectify the problem, is appropriate where a school district knows or should know a child is not receiving more than a *de minimis* educational benefit and fails to correct the situation. *M.C. on behalf of J.C. v. Central Reg'l Sch. Dist.*, 81 F.3d 389, 397 (3d Cir. 1996); *see also W.B. v. Matula*, 67 F.3d 484, 485 (3d Cir. 1995)(cautioning that in determining a remedy, "a district court may wish to order educational services, such as compensatory education rather than compensatory damages for generalized pain and suffering").

[16] I find Damian was denied FAPE for each school day during the period of time Damian was under Jones's and Fox's instruction. Parsing out the exact number of hours Damian was not benefited by FAPE during the time period "would place an arduous and near impossible task upon the administrative bodies." *Keystone Cent. Sch. Dist. v. E.E. ex rel. H.E.*, 438 F.Supp.2d 519, 526 (M.D. Pa. 2006).