IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAMIAN J. and DAWN J. | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 06-3866 |
| | : | |
| THE SCHOOL DISTRICT OF | : | |
| PHILADELPHIA and | : | |
| COMMUNITY COUNCIL FOR MENTAL | : | |
| HEALTH AND MENTAL RETARDATION[1] | : | |

**MEMORANDUM AND ORDER**

**Juan R. Sánchez, J.**                                                                                              **April 22, 2008**

Plaintiffs seek an award of $113,267.16 in attorneys' fees and $2,301.66 in costs for prevailing in their lawsuit against the School District of Philadelphia.[2] The School District opposes the request, arguing Plaintiffs' success was limited, hourly rates requested are unreasonable, and hours billed are excessive, and proposes an award of $15,894.48 in attorneys' fees, or $51,556 in the alternative,[3] and $339.75 in costs. I will award $104,349.45 in attorneys' fees and $2,270.05 in costs.

**FACTS**

I found Damian J. had been denied a Free Appropriate Public Education (FAPE) because the School District failed to implement Damian's Individual Education Plan (IEP) under the Individuals

---

[1]Community Council for Mental Health and Mental Retardation was dismissed on April 25, 2007.

[2]Plaintiffs initially filed a petition for $127,531.54 in attorneys' fees and $4.501.03 in costs. After conceding some fees and costs, Plaintiffs' request is now $113,266.83 in attorneys' fees and $2,301.66 in costs. The request also initially included fees for Heidi Konkler-Goldsmith, but the current request omits these.

[3]The School District proposes $15,894.48 if Plaintiffs are awarded fees only for the federal action and $51,556.40 if Plaintiffs' fees include time spent on the administrative proceedings.

with Disabilities Education Act, 42 U.S.C. § 1401 *et seq.*, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, during the first half of the 2005-2006 school year when Damian was under Kenya Jones's and Shermont Fox's instruction. I awarded Plaintiffs full days of compensatory education for that period of time.

**DISCUSSION**

Under the Individuals with Disabilities Education Act (IDEA), this Court has the discretion to award the prevailing party reasonable attorneys' fees. 20 U.S.C. § 1415(i)(3). "[P]laintiffs may be considered 'prevailing parties' for attorney[s'] fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1933) (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278-79 (1st Cir. 1978)). Plaintiffs here won compensatory education for the period of time Damian J. was denied FAPE. They are, thus, prevailing parties and eligible to recover attorneys' fees.[4]

---

[4]The School District does not dispute Plaintiffs are prevailing parties as to the final outcome of this case; however, it baselessly argues Plaintiffs are prevailing parties only as to the federal civil action and should not be awarded fees for the administrative proceedings before the Hearing Officer or the Special Appeals Panel. The School District calculates the fees associated with the administrative proceedings to be about half of the total fees requested and asks this Court to begin by reducing the award by that amount. The School District argues administrative proceedings and federal actions are treated as two separate phases under the IDEA, and fees are awarded according to the phase in which a party prevails, regardless of the final outcome. Following this reasoning, the School District concludes Plaintiffs are not entitled to fees for the administrative proceedings because they did not succeed in that portion of the case. The only case the School District cites, *Holmes v. Millcreek Twshp. Sch. Dist.*, 205 F.3d 583, 595 (3d Cir. 2000), does not support its contention. In that case, the Court of Appeals reduced the fee award because plaintiffs did not prevail on a significant issue, counsel's failure properly to support the hourly rate requested and the reasonableness of hours expended, and the litigation's needless protraction. The Court of Appeals did not, as the School District contends, deny fees for lack of success in the administrative proceedings phase of litigation. No authority supports the School District's claim the IDEA limits attorneys' fees awards to the phase of the litigation won. Plaintiffs' attorneys' fees cannot therefore be reduced simply because Plaintiffs did not prevail in the administrative proceedings.

A calculation of attorneys' fees begins with the lodestar, the product of the appropriate billing rates multiplied by the number of hours the involved attorneys reasonably expended on the action. *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 703 n.5 (3d Cir. 2005) (citing *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). A reasonable hourly rate is calculated according to the prevailing market rates charged by attorneys of equivalent skill and experience performing work of similar complexity in the community. *Washington v. Phila. County Ct. Com. Pl.*, 89 F.3d 1031, 1035-36 (3d Cir. 1996). The reasonableness of the hours charged is next considered, excluding "excessive, redundant, or otherwise unnecessary" hours.

The party seeking attorneys' fees bears the burden of establishing the reasonableness of each factor in the lodestar equation with satisfactory evidence, in addition to the attorney's own affidavits. *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990); *Washington*, 89 F.3d at 1035-36 (quoting *Blum*, 465 U.S. at 895 n. 11). The opposing party "then has the burden to challenge, by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee." *Rode*, 892 F.2d 1177 at 1183. The Court cannot "decrease a fee award based on factors not raised at all by the adverse party." *Id.* (quoting *Bell v. United Princeton Properties, Inc.*, 884 F.2d 713, 720 (3d Cir. 1989).

Plaintiffs' attorneys' fees request is based on an hourly rate of $375 and 30.5 hours spent on the case by Dennis McAndrews, a partner; an hourly rate of $270 and 222.825 hours spent on the case by David Painter, an associate; an hourly rate of $270 and 114.99 hours spent on the case by Gabrielle Sereni, an associate; an hourly rate of $130 and 22.75 hours as a law student and an hourly rate of $210 and 0.5 hours as an attorney spent on the case by Heather Hulse, an associate; an hourly rate of $120 and 38.333 hours spent on the case by Jan Hardy, a paralegal; an hourly rate of $100 and

3

7.25 hours spent on the case by Leticia Buck, a paralegal; and an hourly rate of $85 and 26.25 hours spent on the case by Marie Molnar, an education assistant. In support, counsel have submitted a chronological list of tasks and the time devoted to those tasks by person, a chart of the total number of hours and fees attributable to each person, résumés, affidavits as to prevailing rates in the area, and copies of deposition invoices.

The School District objects to the hourly rates of Painter, Sereni, and Hulse, but does not object to the hourly rates of McAndrews, Hardy, Buck, or Molnar. Painter, seeking a $270 hourly rate, is an attorney in his fifth year of practice who has practiced special education and civil rights law exclusively. Prior to his law practice, Painter was a Pennsylvania school district psychologist for about 25 years, and owned and operated an independent psychology practice for about 16 years. Sereni, seeking a $270 hourly rate, is an attorney in her ninth year of practice who has practiced exclusively in special education, education, and civil rights litigation. Upon graduation from law school, Sereni served as a federal law clerk for the Honorable Robert F. Kelly. Sereni also has a Masters Degree in Education and taught in the Pennsylvania public school system prior to law school. Hulse, seeking a $130 hourly rate for the time she spent on the case prior to her bar admission and a $210 hourly rate as an attorney, is in her third year of practice. Hulse has been employed with the McAndrews Law Offices for many years working in the area of special education law, and has two Masters Degrees in psychology.

Plaintiffs submit the résumés of Painter, Sereni, and Hulse, an affidavit of McAndrews, and the affidavits of Caryl Oberman, David Thalheimer, and Lorrie McKinley, attorneys regularly practicing special education law. The affidavits of Oberman, Thalheimer, and McKinley attest the rates charged are fair and reasonable and are consistent with, or less than, the prevailing rates for

4

attorneys of similar experience, skill, and credentials in the area.

The School District does not contest the affidavits of Oberman, Thalheimer, or McKinley. Rather, arguing hourly rates should be reduced to the low end of the ranges set forth in the schedule of fees published by Community Legal Services (CLS),[5] the School District presents a copy of the CLS fee schedule[6] and the affidavit of Michael Levin, president of a law firm that includes an education law practice.  The School District argues courts have accepted and relied upon the fee schedule as a reflection of the prevailing market rates in Philadelphia, and cites a number of cases, none of which, however, require me to apply the CLS rates in this case.[7]  I do

---

[5] The School District asks the Court to reduce Painter's hourly rate to $160, Sereni's hourly rate to $200, and Hulse's hourly rate for work performed prior to her bar admission to $75.

[6] The CLS document declares it "lists the fee schedule used by CLS . . . to compensate CLS for the legal services provided to its clients."  It lists $160-$200 per hour for an attorney of two to five years of experience and $200-$230 for attorneys of six to ten years of experience.  The document states the rates are effective April 1, 2006.

[7] The CLS fee schedule has only been relied on in the absence of sufficient evidence, in the absence of objection, or when fees were being awarded to an attorney associated with or employed by CLS. *See Maldonado v. Houstoun*, 256 F.3d 181, 183 (3d Cir. 2001) (relying on CLS schedule where neither party provided much evidence pertaining to reasonable hourly rates); *Melissa G. V. Sch. Dist. Of Philadelphia*, 2008 WL 160613, at *3 (E.D. Pa. Jan. 14, 2008) (crediting CLS schedule where very little else submitted); *Tomasso v. Boeing Co.*, 2007 WL 2753171, at *6-7 (E.D. Pa. Sept. 21, 2007) (using CLS schedule in absence of sufficient evidence to the contrary in addition to strong affidavit supporting CLS rates); *Szafran v. Temple Univ. of the Commonwealth System of Higher Educ.*, 2003 U.S. Dist. LEXIS 7770, at *17-18 (E.D. Pa. Apr. 16, 2003) (finding requested hourly rates reasonable where requested rates fell below CLS fee schedule median rates and in absence of opposition to request); *Graham v. Johnson*, 2003 WL 22352729, at *1 (E.D. Pa. Oct. 15, 2003) (awarding CLS rate where requested and in absence of objection); *Rainey v. Phila. Housing Auth.*, 832 F. Supp. 127, 129 (E.D. Pa. 1993) (applying CLS rate where attorney employed by CLS); *Swaayze v. Phila. Housing Auth.*, No. 91-2982, 1992 WL 81598, at *2 (E.D. Pa. Apr. 16, 1992) (applying CLS rate where attorney associated with CLS); *Farley v. Philadelphia Housing Authority*, 2002 WL 32348272, at *2 (E.D. Pa. Apr. 29, 2002) (using CLS rate where attorney employed by CLS).

When other evidence has been submitted, the CLS fee schedule has only been considered in the context of all the evidence.  *See Bjorkland v. Philadelphia Housing Authority*, 118 Fed. Appx.

not find the CLS rates reasonably can be applied here. The only criteria reflected in the CLS fee schedule is years of experience. The fee schedule does not take into account the specialized skills and advanced degrees the attorneys bring to their practice, their experience in the particular field of special education law, the size of the law firm, the level of work performed, nor the positions of counsel. *See Evans v. Philadelphia Housing Authority*, 1995 WL 154872, at *2-4 (E.D. Pa. Mar. 31, 1995). Moreover, the CLS schedule, published in 1996, does not reflect current rates. *See Lanni v. New Jersey*, 259 F.3d 146, 149 (3d Cir. 2001) ("When attorney's fees are awarded, the current market rate must be used.") (citing *Rode*, 892 F.2d at 1183).

I also cannot credit Levin's affidavit. Contrary to law, Levin calculates hourly rates based on counsel's experience at the time the federal action was initiated in 2006. "The current market rate is the rate at the time of the fee petition, not the rate at the time the services were performed." *Lanni*, 259 F.3d 149-150 (citing *Rode*, 892 F.2d at 1188-89). Plaintiffs' fee petition was filed in 2008, and the 2008 rates for counsel must be used. In addition, Levin appears to base his conclusions about prevailing rates in the community on the rates charged by attorneys in his own law firm when they are billed out to public school districts. He attests his billing rate as president of his law firm with 33 years of experience is $170 per hour, two attorney-shareholders in his firm with 18 and ten years

---

624, 627 (3d Cir. 2004) (considering CLS schedule among a sample of schedules submitted by attorneys); *Dooley v. City of Philadelphia*, 2002 WL 31053375, at *2 (E.D. Pa. Aug. 30, 2002) (rejecting CLS rates in favor of a more specific survey of small firms after considering CLS schedule among a sampling of fee schedules); *Powell v. SEPTA*, 2007 WL 1795686, at *3-4 (E.D. Pa. June 18, 2007) (determining reasonable hourly rate based on other factors though CLS fee schedule was submitted).

The School District cites an additional case, *James v. Norton*, 176 F.Supp.2d 385 (E.D. Pa. 2001), to show courts have approved or reduced hourly rates to conform to CLS rates. In *James*, however, nothing suggests the CLS fee schedule was submitted or considered in the fee determination. *See id.* at 396-97.

of experience, respectively, bill $160 hourly, and an associate in his firm with 24 years of experience, 20 years of that specializing in education law and specifically in civil rights law applicable to disabled students, bills $160 hourly. There is no differentiation for the widely varying amounts of experience. These attorneys also have no experience as counsel to parents and students. I cannot find these rates are a reasonable guide. For these reasons, I must discount Levin's affidavit.

The School District does not challenge the affidavits submitted by Plaintiffs. Moreover, I find McKinley's affidavit highly credible. Based on her significant credentials, experience in civil rights litigation, including special education law, and her experience representing plaintiffs in education and special education matters, I will credit her assessment of Plaintiffs' rates as reasonable and consistent with the rates being charged by attorneys in the community with similar skill, reputation, and experience. I therefore find Plaintiffs' requested hourly rates to be reasonable.

The School District next challenges Plaintiffs' time reports for vagueness and lack of specificity. An attorney seeking compensation "must document the hours for which payment is sought with sufficient specificity." *Washington*, 89 F.3d at 1037 (quoting *Keenan v. City of Phila.*, 983 F.2d 459, 472 (3d Cir. 1992)). Specifically, a "fee petition is required to be specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed." *Id*. (quoting *Keenan*, 983 F.2d at 473). A fee petition should include "some fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, e.g., senior partners, junior partners, associates." *Id.* (quoting *Rode*, 892 F.2d at 1190). Nevertheless, "it is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney." *Id.* Courts have found computer-generated time sheets which

7

include the date and summaries of time spent by an attorney are sufficiently specific. *Id.* (citing *Keenan*, 983 F.2d at 473).

In support of their petition for attorneys' fees, Plaintiffs submit nearly 60 pages chronologically listing the dates when the work was performed, the nature of the work, the time spent by individual attorney or staff, the hourly rate charged, and the total billable cost for that time entry. I find the itemized list is sufficiently specific to allow me to determine whether hours claimed are unreasonable for the work performed. *See Washington*, 89 F.3d at 1037 (holding submitted lists with entries such as "research," "review," "prepare," "letter to," and "conference with" clearly met standards of specificity).

The School District objects to time charges where two attorneys or an attorney and a paralegal attended a hearing, deposition, or argument. "A reduction for duplication 'is warranted only if the attorneys are *unreasonably* doing the *same* work.'" *Rode*, 892 F.2d at 1187 (emphasis in original) (quoting *Jean v. Nelson*, 863 F.2d 759, 773 (11th Cir. 1988)). On April 25 and May 5, 2006, Molnar, an education assistant, billed $765 for nine hours spent in traveling to and attending a Due Process meeting and $552.50 for 6.5 hours traveling to and attending a Due Process hearing both with Painter. I find it reasonable Molnar's assistance to Painter at a meeting to prepare for the Due Process hearing was useful, but I find her presence duplicative at the Due Process hearing, one not unusually complex, where Painter was handling the matter. I will deduct $552.50 in Molnar's fees. On March 1, 2007, Painter billed $405 for 1.5 hours and Sereni billed $540 for two hours spent traveling to and attended a Rule 16 scheduling conference, which Sereni handled. I find the presence of both attorneys at a scheduling conference duplicative. I will deduct the $405 Painter billed for his time. On June 25, 2007, both Painter and Sereni billed for time attending depositions, but it was

only Sereni who actually took them. Painter did not participate in these depositions. I find Painter's time charged for this entry, six hours for a total of $1,620, was unnecessary, and I will deduct the fee. In total, I deduct $2,577.50 for duplicative time.

The School District objects to all time entries regarding Independent Educational Evaluations (IEE), arguing the time is not chargeable because there is no record Plaintiffs expressed disagreement with the School District's evaluations. The only way, however, for Plaintiffs to have obtained an IEE is if Plaintiffs had disagreed with the School District evaluation. *See Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 60 (2005). As the School District presents no other argument for striking these entries, I will not deny them. *See Rode*, 892 F.2d at 1183 (holding a court cannot reduced fees based on factors not raised at all by the adverse party).

Although Plaintiffs conceded the costs associated with the report of Dr. Richard Hall, Plaintiffs did not eliminate the attorneys' fees totaling $274.38 associated with the report. The School District argues this time should not be chargeable because the report was not used or offered in court. I agree with Defendants and find the time spent in preparing for and reviewing the report and materials regarding the report is unreasonable. I will deduct the $274.38 charged.

The School District points out two entries Plaintiffs overlooked when they conceded charges associated with the motion to dismiss Community Council for Mental Health and Mental Retardation. The two entries relate to time spent responding to the motion to dismiss. I will deduct these charges totaling $573.75.

Based on my determination of reasonable rates and hours, the applicable lodestar figure is $109,841.53. I will further reduce this amount by 5% for a total of $104,349.45 to reflect plaintiffs' partial success. "[T]he extent of a plaintiff's success is a crucial factor in determining the proper

9

amount of an award of attorney's fees." *Hensley*, 461 U.S. at 440. "[W]here the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Id.* If a plaintiff has achieved limited success, even where "claims were interrelated, nonfrivolous, and raised in good faith," a fully compensatory amount may be excessive. *Id.* at 436. The court can adjust the lodestar downward for time spent litigating wholly or partially unsuccessful claim related to the litigation of successful claims. *Rode*, 892 F.2d at 1183. "There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment." *Id.* at 436-37.

Plaintiffs asked this Court to find the School District failed to provide FAPE during the 2005-06 school year based on three claims: (1) from September to the end of December, 2005, Jones and Fox, the teachers at different times responsible for implementing Damian's IEP, were not qualified to teach Damian's class, violating the IDEA and Pennsylvania law, and resulting in a failure to implement Damian's IEP; (2) Damian was improperly restrained on three occasions during the 2005-06 school year; and, (3) Damian's IEP was implemented improperly by inadequate progress reporting of IEP goals and by a failure to address Damian J.'s behavioral needs. I found Damian had been denied FAPE during the first half of the school year, and awarded full days of compensatory education for that period of time.

I find Plaintiffs' success was substantial: Plaintiffs succeeded in proving Damian had been denied FAPE and Damian's rights were vindicated. Plaintiffs' claims, both successful and unsuccessful, were interrelated, nonfrivolous, and raised in good faith. The claims arose out of a

10

common core of facts involving deficiencies in Damian's classroom environment. The claims were also based on related theories regarding the implementation of Damian's IEP. I find much of counsel's time was devoted generally to the litigation as a whole and the hours spent on the various claims cannot be divided. *See Hensley*, 461 U.S. at 435 (reasoning in many cases claims involve a "common core of facts" or are "based on related legal theories," and "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis"). I also find counsel carefully prepared this case and their work was thorough and skilled. Plaintiffs' success, however, was not complete, and I find a slight fee reduction reasonable to reflect the limited success. Given the significance of the overall relief obtained in relation to the hours reasonably expended on the litigation, I find a reduction of 5% to be reasonable.

  Finally, Plaintiffs seek $2,301.66 in costs. The School District objects to costs other than the costs of deposing Kenya Jones. I will deduct a total of $31.51 for mileage and parking because these costs are not authorized by 28 U.S.C. § 1920. I do not find the costs of deposing Patricia Nuble unreasonable. Nuble testified to the qualifications of Kenya Jones and Jones's performance teaching Damian J.'s classroom. Her testimony contributed to Plaintiffs' success. Plaintiffs are thus entitled to the costs of Nuble's deposition. The School District does not explain why it objects to the costs of deposing Demetrius Wideman. I find it has not met its burden of challenging this cost with sufficient specificity. *See Rode*, 892 F.2d at 1183. Plaintiffs are awarded costs of $2270.05.

  An appropriate order follows.